**Ricardo J. BORDALLO, Governor of Guam, Plaintiff-Appellant,**

v.

**Tony REYES, Taro Kanai, Roberto Olaya, and Carl Peterson, Defendants-Appellees.**

No. 84–1665.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1984.

Decided June 21, 1985.

Nancy Nye, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellant.

Gary Hull, Agana, Guam, for defendants-appellees.

Before WRIGHT, POOLE and WIGGINS, Circuit Judges:

POOLE, Circuit Judge:

Ricardo J. Bordallo, Governor of Guam ("Governor") appeals from a judgment of the District Court of Guam holding that the Guam Visitors Bureau ("Bureau"), as established pursuant to Public Law 17–32, Article I, Chapter 9, Title 12, Guam Code Annotated, is not an agency or instrumentality of the government, and that section 9106(a) of Public Law 17–32 does not contravene the Organic Act of Guam.

We affirm.

## FACTS AND PROCEEDINGS BELOW

In November 1983, the seventeenth Guam Legislature passed Public Law 17–32 creating the Guam Visitors Bureau in its

present form[1] under the Guam Visitors Bureau Act ("Act"). Section 9102 of the Act provides:

There is hereby created a public corporation to be known as the "Guam Visitors Bureau" as hereinafter provided. The corporation shall be a non-stock, non-profit membership corporation to be governed in accordance with the applicable general corporation laws of the Territory of Guam, except as provided otherwise by this article. No articles of incorporation shall be required; this article shall be its charter.

The Bureau derives its funding partly from government sources and partly from sources within the private sector. Any individual, partnership, corporation or association may become a voting member by paying annual dues of at least $100.00. Under Section 9106(a) of the Act,[2] four members of the board of directors were to be appointed by the Governor with the ad-

vice and consent of the Legislature. Four directors, contributing members in good standing, were to be elected by the membership. These eight directors were to select the ninth by a vote of at least six directors. The Act required the Governor to submit his four nominations for directors by December 15, 1983. The election of directors by the contributing members was to occur on December 28, 1983.[3]

On December 13, 1983, the Governor brought an action in the District Court of Guam, naming as defendants the four membership directors. The action sought: (1) a declaration that section 9106(a) of the Act violated section 6 of the Organic Act, codified at 48 U.S.C. § 1422, by infringing on the Governor's responsibility to control all agencies and instrumentalities of the Government of Guam; and (2) a preliminary and permanent injunction preventing the defendants from turning over control

---

1. The Bureau was first established in 1952 under section 4 of Public Law 67, codified at title 34, chapter 1, section 38003 of the Government Code of Guam. That section, as amended by Public Law 8–68 in 1965, provided:

The Guam Visitors Bureau shall be a nonprofit organization formed for the purpose of promoting the establishment of the visitors industry in Guam and whose constitution and by-laws and amendments thereof, shall be approved by the Governor.

In June 1970, the Governor promulgated Executive Order No. 70–24, which characterized the Bureau as a "quasi-autonomous instrumentality of the government" and mandated that the Bureau "operate separate and apart from any department or agency of the Government of Guam."

2. Section 9106(a) of the Act states:

The exercise of the powers of the Bureau shall be directed by the Board of Directors composed of nine (9) members selected in accordance with this Section. Four (4) directors, referred to as "appointed directors" shall be members and shall be appointed by the Governor with the advice and consent from the Legislature. One of the appointed directors shall be a commissioner or assistant commissioner selected by the Commissioner's Council. Four (4) directors, referred to as "elected directors" shall be contributing members in good standing elected by the membership. The four (4) appointed and four (4) elected directors shall then select the ninth (9th) director by a vote requiring concurrence of six (6) of the directors. The ninth (9th) director shall be actively and directly involved

in the tourism industry. The Board of Directors shall elect from amongst its body a chairperson and vice-chairperson. The ninth director from a previous board shall not be held over solely to act as the ninth director of a new board. The ninth director of a previous board may be appointed as the ninth director of any subsequent board as set forth herein.

3. Section 9114 of the Act, Public Law 17–32 provides that:

(a) The Bureau as organized pursuant to this Article shall commence business on January 9, 1984.

(b) The Governor shall submit to the Legislature the names of nominees of appointed directors no later than December 15, 1983.

(c) The four (4) directors elected by the membership of the existing Guam Visitors Bureau shall call and conduct a meeting of contributing members no later than December 28, 1983 to elect elected directors to serve for a two-year term commencing January 9, 1984. For the first election contributing members who have paid contributions for the 1984–1985 bi-annual period on or before December 14, 1983, shall be entitled to one (1) vote for each $200 contributed up to a maximum of ten (10) votes. No contributing member may vote by proxy at the first meeting. The quorum for the first meeting shall be at least fifty percent (50%) of votes of contributing members. The four persons receiving the four highest number of votes shall be elected. In case of a tie, a run-off shall be held.

of the Bureau to private organizations by the election of directors by contributing members, which was scheduled for December 28.

On January 12, 1984, the district court filed its decision denying injunctive relief and holding that the Bureau was not an agency or instrumentality within the Executive Branch of the Government of Guam. The decision stated that a memorandum order and a judgment would follow. On February 8, the court issued its memorandum order explaining the basis of its holding that the Bureau was not an instrumentality of the government. On the same day, the court also filed a declaratory judgment upholding the validity of the December 28 election and section 9106(a), which provided that the Governor shall appoint four members of the Bureau. This judgment was entered on February 16.

On February 14, 1984, the Governor filed a notice of appeal, and on February 21, he filed a "motion for clarification, or in the alternative, a motion for a stay." The district court entered an order denying the motion for clarification or for a stay on April 6. The Governor appeals, on the same grounds as those tendered to the district court.

## DISCUSSION

### I. *Jurisdiction*

▮ A threshold issue of timeliness of the notice of appeal must first be resolved. A timely notice of appeal is mandatory and jurisdictional. *Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978). Appellant's February 14, 1984, notice of appeal from the district court's judgment, which was decided on February 8, but not entered until February 16, was timely and is to be "treated as filed after such entry and on the date thereof." Fed. R.App.P. 4(a)(2). However, Rule 4(a)(4) provides that if a timely motion is made to alter or amend the judgment under Fed.R. Civ.P. 59(e), a notice of appeal filed before disposition of that motion is a nullity. *Griggs v. Provident Consumer Discount*

*Co.*, 459 U.S. 56, 60–61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982). In such a case, to perfect an appeal, the party must file a new notice of appeal within thirty days after disposition of the motion. Fed.R. App.P. 4(a)(4).

The Governor's "motion for clarification, or in the alternative for a stay" was filed on February 21, 1984. If that motion was to alter or amend the judgment under Rule 59(e), this court would be without jurisdiction, since no new notice of appeal was filed within the prescribed time after the disposition of appellant's motion. If, on the other hand, the motion is characterized as merely seeking clarification and a stay under Fed.R.Civ.P. 62(c), then the notice of appeal would be valid, and jurisdiction would lie. This court *sua sponte* raised the issue of its jurisdiction, directing the parties to file supplemental briefs addressing the jurisdiction question.

▮ Since "nomenclature is not controlling," a court must construe whether a motion, however styled, is appropriate for the relief requested. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir.1983); *Sea Ranch Ass'n v. California Coastal Zone Conservation Comm'ns*, 537 F.2d 1058, 1061 (9th Cir.1976).

▮ With this is mind, we consider the relief sought by the Governor's February 21 motion. The Governor sought clarification of the third paragraph of the district court's declaratory judgment, the language of which stated:

> * * * pursuant to the provisions of Section 9106(a) of Article 1, four (4) members of the Board of Directors of the Guam Visitors Bureau, designated as "appointed directors" *shall* be appointed by the Governor of Guam with the advice and consent from the Guam Legislature. (Emphasis supplied.)

The Governor asked the district court to declare that this language was merely declaratory, or in the event the court found it mandatory, to grant a stay of the judgment pending appeal pursuant to Fed.R.Civ.P.

62(c). There was no request to alter or amend the judgment, an action requiring a "substantive change of mind by the court." *Miller,* 709 F.2d at 527. Rather, it invited interpretation, which trial courts are often asked to supply, for the guidance of the parties. The district court treated the motion for clarification or for a stay in that light. It responded by stating that the language of the order clearly directed the Governor to act; hence the stay would be denied.[4] The court made no reference to an alteration or amendment of the judgment.

We consider the foundation of Appellate Rule 4 to be the accommodation of the time for lodging appeals with the necessary flexibility accorded to the court and litigants in seeking to know what rights and responsibilities are encompassed in the language of orders and judgments. Therefore, courts examine the real nature of motions so as to sustain jurisdiction on appeal even where it is not altogether free of doubt. *E.g., Whittaker v. Whittaker Corp.,* 639 F.2d 516, 521 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981) (motion to retax costs characterized as Rule 59(e) motion to allow for timely filing of notice of appeal); *Miller v. Transamerica Press, Inc.,* 709 F.2d 524, 527–28 (9th Cir.1983) (Rule 59(e) motion characterized as Rule 60(a) motion so as not to destroy pending notice of appeal). This comports with the policy of liberally construing the Federal Rules of Appellate Procedure to carry out Congress' desire for fairness in the administration of justice and a just determination of litigation. 9 Moore's Federal Practice ¶ 201.08[1]. In this case, however, we have no need to recharacterize the Governor's motion since we find that it was indeed a motion seeking either clarification or a stay, and not a motion to alter or amend the judgment. Accordingly, we hold that the Governor's notice of appeal was timely and that we have jurisdiction.

## II. *The Merits*

■ The Governor contends that section 9106(a) of the Act violates that part of section 6 of the Organic Act of Guam, 48 U.S.C. § 1422, which provides:

> The Governor shall have general supervision and control of all the departments, bureaus, agencies and other instrumentalities of the executive branch of the Government of Guam.

If the Bureau is held to be a department, bureau, agency, or other instrumentality of the executive branch, then section 9106(a) is inconsistent with the Organic Act. The district court determined that it was not. Since the district court's determination resolved a question of federal law, which arose under the Organic Act of Guam, 48 U.S.C. § 1421, *et seq.,* we review it *de novo.*[5] *In re Bialac,* 712 F.2d 426, 429 (9th Cir.1983) (en banc); *see also Matter of McLinn,* 739 F.2d 1395, 1403 (9th Cir.1984) (en banc) (determination of state law subject to *de novo* review).

---

4. The order stated:
   IT IS HEREBY ORDERED:
   1. That plaintiff's Motion for Stay of the Declaratory Judgment herein is hereby denied.
   2. That the intent and clear language of this Court in its Declaratory Judgment of February 8, 1984 was and is to directly order Ricardo J. Bordallo, Governor of Guam, to appoint four (4) Directors of the Guam Visitors Bureau for confirmation under P.L. 17–32.
   3. The above appointments shall be made, and such names submitted to the Legislature on or before April 20, 1984.
   We think, in practical effect, the Governor simply asked the district court if its declaration really meant what it said. The Court responded that the judgment really did mean what it said.

5. We applied a different standard of review in analyzing a related question in *Laguana v. Guam Visitors Bureau,* 725 F.2d 519 (9th Cir. 1984). There, in response to plaintiff's challenge to the interpretation of Guam law, we held the Guam District Court's conclusion that the Guam Visitors Bureau was not a governmental instrumentality to be "tenable and sound" and "[not] manifestly erroneous." *Id.* at 521. In the instant case, by contrast, the Governor does not challenge the interpretation of Guam law. Rather, he asserts inconsistency of Guam law with respect to federal law, specifically the Organic Act.

To support his claim that the Bureau is a government entity, the Governor relies principally on section 9(c) of Public Law 17–37, the legislative intent amendment of November 29, 1983, which was passed seven days after the original enactment of the Act. It provides:

Recently the Guam District Court ruled that the Guam Visitors Bureau is a private entity contrary to the general understanding of the Legislature. It is the intent of the Legislature to continue without interruption, the current acts and actions of the Guam Visitors Bureau and to clarify its legal status, duties, powers, and the status of its employees.

The court ruling referred to in this section apparently was the district court's decision in *Laguana v. Guam Visitors Bureau*, 725 F.2d 519 (9th Cir.1984), which held that the Bureau was not a public entity, and which this court affirmed. *Id.* at 521.

The Governor argues that in section 9(c) of the amendment, the Legislature was reaffirming the Bureau's status as a public entity, as under the previous statute. However, the language of that legislation plainly established the Bureau as a "public corporation." Section 9(c) does not indicate that the Bureau also was to be an instrumentality of the government. The district court did not discuss the after-the-fact legislative intent in section 9(c), but looked to the language of the new Act which emphasized that the Bureau was chartered as a public corporation.

The district court found that in creating certain public corporations, such as the Guam Airport Authority, the Guam Telephone Authority, the Guam Power Authority, and the Port Authority of Guam, the Legislature had expressly designated each as a public corporation and as an instrumentality of the government. The Legislature also chartered other public corporations which were not designated as instrumentalities of the government. The district court thus concluded that because the Legislature had expressly designated four public corporations as instrumentalities of the government, it did not intend the same characterization to apply to other public corporations, not so designated. Consequently, the Bureau was not a governmental entity since it had not been expressly designated as such.

We agree with the district court that the Bureau was not an instrumentality of the government. Accordingly, we find no conflict between section 9106(a) of Public Law 17–32 and section 6 of the Organic Act. The judgment is

AFFIRMED.

WIGGINS, Circuit Judge, Dissenting:

I dissent because I conclude that we lack jurisdiction over this appeal. Despite the Governor's claim to the contrary, I am convinced that his "Motion for Clarification, or in the alternative, for a Stay" was in fact a timely motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). As such, the Governor's notice of appeal, filed on February 14, 1984, became a nullity. Fed. R.App.P. 4(a)(4); *Griggs v. Providence Consumer Discount Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982). Because the Governor failed to file a timely notice of appeal after the district court's disposition of the motion for clarification, we must dismiss this appeal for lack of jurisdiction. Fed.R.App.P. 4(a)(4); *Griggs*, 459 U.S. at 61, 103 S.Ct. at 403; *Bestran Corp. v. Eagle Comptronics, Inc.*, 720 F.2d 1019 (9th Cir.1983); *Brodigan v. McCormack*, 704 F.2d 1073, 1074 (9th Cir.1983).

The correctness of my view that this appeal must be dismissed hinges upon the proper interpretation of the Governor's post-judgment motion. The Governor did not label his motion as one taken under Rule 59(e). Labels, however, do not control our reading of the substance of a motion. *Miller v. Transamerican Press Inc.*, 709 F.2d 524, 527 (9th Cir.1983); *Sea Ranch Ass'n v. California Coastal Zone Conservation Comm'n*, 537 F.2d 1058, 1061 (9th Cir.1976).

The Governor asserts that he did not seek a substantive change in the district court's judgment but rather simple clarification of an inherently ambiguous state-

ment in the judgment.[1] If the Governor is correct, his motion for clarification may properly be characterized as one taken under Fed.R.Civ.P. 60(a) and our jurisdiction over this appeal would be unaffected. *Cf. Miller v. Transamerican Press, Inc.,* 709 F.2d at 527; *Huey v. Teledyne, Inc.,* 608 F.2d 1234, 1237 (9th Cir.1979) *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982).

The Governor's assertion must be considered in the context of the fundamental issue of this lawsuit. The controversy which gave rise to this action was control over the Guam Visitors Bureau (the Bureau), as it was established in 1983 under Public Law 17–32, the new Guam Visitors Bureau Act. The Governor insisted that the Bureau was an agency within the executive branch and therefore subject to his control. He intended to exercise control over the Bureau by his power of appointment over the Bureau's board of directors.

Under section 9106(a) of the new Act, however, the legislature diluted the Governor's power to control the Bureau's board of directors by directing him to nominate only a minority of its members. The validity of this section is the heart of this dispute.

Concluding that the Bureau was not an agency within the executive branch, the district court upheld the validity of section 9106(a) and with unmistakable clarity ordered the Governor to make the nominations to the Bureau's board of directors required under section 9106(a). These nominations were essential to constitute a quorum in order to permit the Bureau to discharge its legislated functions.

In his post-judgment motion for clarification, the Governor asked the district court to reverse its ruling by merely authorizing, and not compelling, the nominations. Through this post-judgment motion, the Governor sought a fundamental alteration in the terms of the judgment which went to the heart of the lawsuit. The district court refused to amend its judgment as requested by the Governor; instead, it "clarified" its judgment by setting a specific date for submission of the Governor's nominations of the appointed board members.

To dismiss this appeal when no substantive change resulted in the district court's judgment as a consequence of the filing of the motion for clarification may seem harsh and, indeed, it is. Nonetheless, Fed.R. App.P. 4(a)(4) clearly requires dismissal, and for good reasons.

Rule 4(a), as amended in 1979, provides in relevant part:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order ... granting or denying ... such motion. A notice of appeal filed before the disposition of [the Rule 59(e) motion] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. Fed.R.App.P. 4(a)(4).

Prior to the 1979 amendment to Rule 4(a), a condition existed which demanded reform. *See generally Griggs,* 459 U.S. at 58–60, 103 S.Ct. at 402–403; 9 J. Moore, B. Ward, J. Lucas, *Moore's Federal Practice* ¶ 204.12[1] at 4–63 to 4–65 (2d ed. 1983). The former version of Rule 4(a) recognized that the district court should retain authority to make substantive changes in its judgment upon a motion filed within ten days of the entry of judgment. A post-judgment motion under Rule 59(e) was an appropriate vehicle to request such substantive corrections in the district court judgment "without implicating the appellate process." *Clipper Express v. Rocky Mountain Mo-*

---

1. The Governor sought clarification of the third paragraph of the district court's judgment. The paragraph reads in relevant part:

   ... pursuant to the provisions of Section 9106(a) of Article I, four (4) members of the Board of Directors of the Guam Visitors Bureau, designated as "appointed directors" shall be appointed by the Governor of Guam with the advice and consent from the Guam Legislature.

*tor Tariff Bureau, Inc.,* 690 F.2d 1240, 1249 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). However, the law was also firmly established that the filing of a notice of appeal transferred jurisdiction over the case from the trial court to the appellate court. *See generally Griggs,* 459 U.S. at 58, 103 S.Ct. at 402. This latter rule served the obvious purpose of fixing responsibility in one court for the control and disposition of a case, and foreclosing the possibility of continued tinkering with a judgment by a district court after an appeal from that judgment had been properly filed. *Id.*

As a consequence, under the pre-1979 procedures, if a notice of appeal were filed before a timely motion to alter or amend the judgment, the district court was divested of jurisdiction to rule on the motion in the absence of a remand from the court of appeals. *See id.* 58–59, 103 S.Ct. at 402 and cases cited therein. If, however, a timely motion to alter or amend the judgment was filed prior to a notice of appeal then both the district court and the appellate court could simultaneously exercise their respective powers over the same case. *See id.*

It is clear that under the former Rule 4(a), despite the filing of a timely motion to alter or amend the judgment, a district court could be stripped of the initial opportunity to make substantive corrections in its judgment which might obviate the need for an appeal. Furthermore, the potential for an overlap in the respective jurisdictions of a court of appeals and a district court created the possibility of an inefficient and wasteful use of judicial resources. In order to ensure that the district court had the initial opportunity to correct its own errors, if any, and to prevent unnecessary appellate review, Rule 4(a)(4) was amended to its present form. *See Griggs,* 459 U.S. at 60 n. 2, 103 S.Ct. at 403 n. 2 (quoting the explanation given by the Advisory Committee for Appellate Rules for the amendment to Rule 4(a)(4)).

Rule 4(a)(4) clearly sets forth the effect of a timely motion to alter or amend the judgment. It nullifies any notice of appeal filed prior to the disposition of such a motion. Fed.R.App.P. 4(a)(4); *Griggs,* 459 U.S. at 60–61, 103 S.Ct. at 403. To perfect an appeal litigants must file a timely notice of appeal after the disposition of the motion. *Id.*

Rule 4(a)(4) requires a certain rigidity to serve its purposes. If a district court were to grant a Rule 59(e) motion to alter or amend, the amended judgment would supplant the original judgment. An appeal from the original judgment would lose its vitality. Any work on the appeal from the original judgment would have been wasted. Because it is impossible to foresee how a district court will rule on a 59(e) motion, Rule 4(a)(4) expressly eliminates appellate jurisdiction upon the *filing* of a timely Rule 59(e) motion, rather than upon its disposition. In this manner precious judicial resources are economized. By the same token, if the nature of the post-judgment motion is in doubt, our inquiry into the substance of the motion must focus upon its true purpose when it was made rather than upon the district court's disposition of the motion.

I have no hesitancy in concluding that the Governor's motion for clarification, when made, was intended to work a substantive change in the district court's original judgment. That the motion was denied does not alter the fundamental character of the motion itself.

In my view, this circuit has suffered from an inconsistent application of Rule 4(a)(4). From a survey of cases in which we addressed similar jurisdictional problems, it appears that our primary concern may be saving our appellate jurisdiction rather than serving those important policy interests which prompted the amendments to Rule 4(a)(4). For example, in cases where no notice of appeal was filed from the original judgment but such a notice was timely filed after the disposition of a post-judgment motion that was filed within ten days of the entry of judgment, we have been quick to save our jurisdiction by construing the post-judgment motion as one

under Rule 59(e). *See e.g., Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 811–12 (9th Cir.1981) (motion filed two days after entry of judgment seeking a new trial and relief from summary judgment under Rules 59 and 60 construed as a Rule 59(e) motion); *Whittaker v. Whittaker Corp.,* 639 F.2d 516, 520–21 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981) (motion to retax costs construed as timely Rule 59(e) motion); *Sea Ranch Ass'n,* 537 F.2d at 1061 (motion filed three days after entry of judgment which sought reconsideration and clarification under Rule 60(b) deemed to be a motion under Rule 59(e)).

On the other hand, we have also construed a post-judgment motion, which was filed within ten days of the entry of judgment, as a Rule 60(b) motion so as to save our jurisdiction where an appellant filed a notice of appeal from the original judgment but neglected to file a new notice of appeal after the disposition of the post-judgment motion. *See United States v. 1982 Sanger 24' Spectra Boat,* 738 F.2d 1043 1045–46 (9th Cir.1984).

It is often difficult to draw a tenable distinction in these two categories of cases on the basis of the substance of the motions made.

Our cases are guidelines for litigants and district courts alike. It is regrettable that we have given both inconsistent guidance in measuring the effect of post-judgment motions on our jurisdiction. Indeed, the impression may exist that there is something to be gained by inartful motions because, upon appellate review, we will construe them "liberally" so as to preserve our jurisdiction.

Litigants should be encouraged to file precise motions which specify the authority for the relief requested and to articulate with particularity the arguments in support of their motions. Such precision would eliminate many of the jurisdictional problems that have arisen under Rule 4(a)(4). By inconsistent adjudications of cases which present this jurisdictional issue, however, we encourage imprecision and sloppy motion practice.

For the foregoing reasons, I conclude that the Governor's motion for clarification in this case is one falling within the ambit of Rule 59(e). Because the Governor failed to comply with the requirements of Rule 4(a)(4), the appeal must be dismissed for lack of jurisdiction.