NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LUIS LORENZO VARGAS,

        Plaintiff-Appellant,

  v.

CITY OF LOS ANGELES; et al.,

        Defendants-Appellees.

No. 19-55967

D.C. No.
2:16-cv-08684-SVW-AFM

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted April 12, 2021
Pasadena, California

Before: PAEZ and VANDYKE, Circuit Judges, and KORMAN,[**] District Judge.

Memorandum joined by Judge VANDYKE and Judge KORMAN, and joined in
part by Judge PAEZ
Concurrence by Judge KORMAN
Dissent in part by Judge PAEZ

Appellant Luis Lorenzo Vargas appeals five district court rulings pertaining

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

[**] The Honorable Edward R. Korman, United States District Judge for the Eastern
District of New York, sitting by designation.

to his claims raised under 42 U.S.C. § 1983: (1) the court's dismissal of his claim alleging that the identification procedures used during his criminal proceeding violated due process; (2) the court's summary judgment ruling pertaining to his claims raised under *Brady v. Maryland*, 373 U.S. 83 (1963);[1] (3) the court's dismissal of the jury prior to a trial on his claims raised under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (4) the court's exclusion of evidence pertaining to his innocence; and (5) the court's exclusion of his proffered expert testimony. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.[2]

First, the district court correctly determined that issue preclusion barred re-litigation of Vargas's identification procedures claim. *See Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990) (holding that preclusion issues are reviewed de novo). "State law … governs the application of collateral estoppel to a state court judgment in a federal civil rights action." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019).

California's collateral estoppel requirements are met here. *See id.* The issue

---

[1] Vargas limits his *Brady* arguments to the district court's summary judgment order entered on August 7, 2018. Our decision on this claim is therefore limited to the *Brady* claims addressed by that order. *See Momox-Caselis v. Donohue*, 987 F.3d 835, 842 (9th Cir. 2021).

[2] Because the parties are familiar with the facts, we recite them here only as necessary.

litigated in Vargas's motion to suppress in his criminal case (where he moved to suppress the victims' identifications of Vargas) and in this § 1983 lawsuit is identical: in both instances, Vargas challenged whether the witness identification procedures violated his constitutional right to due process. *See Ayers*, 895 F.2d at 1271; *Textron Inc. v. Travelers Cas. & Sur. Co.*, 259 Cal. Rptr. 3d 26, 36–37 (Cal. Ct. App. 2020), *review denied* (July 8, 2020). And the state court's denial of Vargas's motion to suppress was sufficiently final for the purposes of collateral estoppel: it was not avowedly tentative, the parties were fully heard, and the trial court's reasoned decision was affirmed by the California Court of Appeal. *See Border Bus. Park, Inc. v. City of San Diego*, 49 Cal. Rptr. 3d 259, 280 (Cal. Ct. App. 2006); *Schmidlin v. City of Palo Alto*, 69 Cal. Rptr. 3d 365, 370, 401–02 (Cal. Ct. App. 2007). Vargas also had a fair and full opportunity to litigate the issue in his criminal proceeding because the trial court fairly and fully entertained his oral and written arguments, and Vargas does not complain of any procedural unfairness or defect with respect to that proceeding. *See Ayers*, 895 F.2d at 1271–72. And while Vargas argues that the defendants' alleged suppression of other assaults renders the application of collateral estoppel inequitable, evidence of other assaults is irrelevant to the procedures used in facilitating the three independent victim identifications that he seeks to relitigate. *See United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985); *People v. Cook*, 157 P.3d 950, 963–64 (Cal. 2007). Moreover, applying collateral

3

estoppel here furthers California's public policies by preventing duplicate litigation over conduct that concluded over 20 years ago, particularly when Vargas had a full and fair opportunity to litigate the relevant facts and arguments at that time. *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019); *Direct Shopping Network, LLC v. James*, 143 Cal. Rptr. 3d 1, 10 (Cal. Ct. App. 2012).[3]

The dissent argues that "allowing Vargas to litigate this claim in a civil suit under 42 U.S.C. § 1983 is not a significant burden on the judicial system." We disagree. Re-litigating the same issue would pose a substantial burden: not only would it require another trial, but it would also necessitate the unearthing of evidence, witnesses (who are victims of sexual assaults), and materials pertaining to identification processes that took place over 20 years ago.

The dissent also contends that the pre-discovery dismissal of Vargas's identification procedures claim in this case prejudiced him by precluding him from gaining new information pertaining to his wrongful identification. But nothing prevented Vargas from requesting and obtaining evidence relevant to his identification procedures claim in his prior criminal case, which Vargas admitted at oral argument. *See also Magallan v. Superior Ct.*, 121 Cal. Rptr. 3d 841, 845, 856–

---

[3] Vargas does not dispute that the issue was actually litigated and necessarily decided in his criminal proceeding, or that the privity requirement is met. *See Mills*, 921 F.3d at 1169. We therefore need not address those issues. *See Momox-Caselis*, 987 F.3d at 842.

57 (Cal. Ct. App. 2011) (acknowledging "the defendant's procedural due process right to a full and fair suppression hearing" and concluding that a magistrate judge had the power to grant a motion for discovery in support of a suppression motion). While Vargas asserts he was prejudiced by the inability to obtain discovery in this lawsuit, he fails to point to any new *relevant* evidence that he could now obtain through discovery that he was barred from obtaining in his criminal case. Thus, the only prejudice collateral estoppel caused to Vargas is the same prejudice every litigant experiences from collateral estoppel: he doesn't get another bite at the apple. But neither Vargas nor the dissent can explain how this bite would produce materially different results than the previous discovery opportunities afforded to Vargas.

Ultimately, the dissent's collateral estoppel analysis makes the same mistake that infects Vargas's arguments—that is, assuming that the later vacatur of Vargas's conviction based on recent DNA evidence must somehow be relevant to the identification procedures. It's not. The fact that *other* later-discovered evidence now supports the conclusion that Vargas did not commit the crimes says nothing about whether the identification procedures themselves were problematic. Completely proper identification procedures may still result in an incorrect identification. Beyond mere speculation, Vargas has provided no indication that there was something improper about the identification procedures in this case that

5

he did not already have the opportunity to pursue in his prior criminal case.

Second, the district court did not err in granting partial summary judgment on Vargas's *Brady* claims because the district court did not actually grant partial summary judgment. Instead, the court explicitly *denied* summary judgment. The district court did not prevent Vargas from attempting to present evidence of those assaults at trial, and subsequent representations by the district court and Vargas support the conclusion that they understood the summary judgment order to constitute a full denial. *See Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985) (looking to the district court's subsequent statements to determine the nature of an order).

Third, the district court erred in dismissing Vargas's *Monell* claims, which it did by dismissing the jury prior to any trial on those claims. The district court predicated its dismissal on *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (per curiam), but *Heller* concerns excessive force claims that are not at issue here. *See Fairley v. Luman*, 281 F.3d 913, 916–17 (9th Cir. 2002) (per curiam). Because *Heller* does not present a categorical bar to *Monell* liability in the absence of individual liability, we reverse and remand for a final adjudication of Vargas's *Monell* claims, including the scope of the remaining *Monell* claims. But while Vargas is entitled to a final judgment on these claims, we take no position as to whether his *Monell* claims must be tried or whether they could be properly

6

adjudicated prior to trial.

Fourth, the district court did not abuse its discretion in excluding evidence of Vargas's factual innocence. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1021 (9th Cir. 2014) (en banc) (recognizing that evidentiary rulings are reviewed for abuse of discretion). Regardless of whether Vargas invited this alleged error, the district court reasonably excluded evidence of his innocence because that evidence could have confused the issues for the jury, as the trial only concerned liability for the *Brady* claims. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008); *Martinez v. Ryan*, 926 F.3d 1215, 1228 (9th Cir. 2019) (holding that *Brady* concerns the evidence available at the time of trial, not "exculpatory evidence [that] later surfaces").

Fifth, the district court did not abuse its discretion in excluding Vargas's proffered expert testimony. *United States v. Arvin*, 900 F.2d 1385, 1388–89 (9th Cir. 1990) (noting that the exclusion of expert testimony is reviewed for abuse of discretion). It reasonably concluded that the experts would inappropriately usurp the jury's function, especially given the trial's first-phase focus on the detectives' credibility. *See Nationwide Transp. Fin.*, 523 F.3d at 1058–59 (the district court did not abuse its discretion in excluding expert witness testimony offering legal conclusions). And even if the district court had erred, the error was harmless. *See*

7

*United States v. Hermanek*, 289 F.3d 1076, 1092–93 (9th Cir. 2002).[4]

In conclusion, we affirm the district court's dismissal of Vargas's identification claim, its denial of summary judgment issued on August 7, 2018, and its exclusion of evidence pertaining to Vargas's innocence and expert testimony. The district court's dismissal of Vargas's *Monell* claims is reversed and remanded for further proceedings consistent with this disposition.

**AFFIRMED in part, and REVERSED and REMANDED in part.** The parties shall bear their own costs on appeal.

---

[4] We also grant the appellees' Motion for Judicial Notice of Exhibits Being Proffered.

*Vargas v. City of Los Angeles*, et al., No. 19-55967

Korman, *D.J.*, concurring.

I concur in the memorandum disposition in full. I agree with the majority that "*Heller* does not present a categorical bar to *Monell* liability in the absence of individual liability." But I write separately to express my view that this issue is closer than the majority suggests. Specifically, the record makes clear that the parties and the district court understood that the issue of *Monell* liability would not be submitted to the jury unless Vargas prevailed against the individual defendants.

Before trial, the district court entered an order that it would proceed in three stages: "(1) liability of Defendants Quijano and Smith; (2) *Monell* liability of the City of Los Angeles and the Los Angeles Police Department (*if necessary*); and (3) damages (if necessary)." ER 30 (emphasis added). The critical language, which provided that the second phase of the trial would occur "if necessary," indicated the understanding of the district judge and the parties that this phase would occur only if there was a verdict in favor of Vargas against the individual defendants. Vargas has no persuasive response to this commonsense understanding of the district court's order.

Indeed, the district court's colloquy with the jury and the parties after the verdict for the individual defendants is consistent with the understanding that the second (or *Monell*) phase would only be necessary if there was a verdict in favor of

1

Vargas at the first stage of trial. Specifically, the district court told the jury, "I want to thank you for your close attention to the case. I want to especially thank you for being so punctual and on time. And I hope that the experience as a juror in Federal Court was an interesting one and the parties and the Court thank you for your careful attention and diligence in this case. Thank you. You are discharged." *Id.* at 1286. While it was obvious that there would be no second phase, Vargas's attorney did not indicate any disagreement with the discharge of the jury before it left the courtroom. Vargas's attorneys thus arguably invited any possible error. But because defendants did not make this argument below when opposing Vargas's motion for a new trial (and have barely mentioned it on appeal), they have forfeited it. *R.L. Inv. Ltd. Partners v. I.N.S.*, 273 F.3d 874, 874–75 (9th Cir. 2001). I therefore concur in the memorandum disposition.

*Luis Vargas v. City of Los Angeles*, No. 19-55967

Paez, J., dissenting in part.

I join the majority's disposition except as to Vargas's due process identification procedures claim. As to the majority's disposition of that claim, I respectfully dissent. I would hold that issue preclusion should not apply, and would reverse the district court's dismissal of the claim.

Under California law, when the requirements of collateral estoppel are met, a court still "look[s] to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting." *Lucido v. Superior Court*, 51 Cal. 3d 335, 342–43 (1990) (citing *People v. Sims*, 32 Cal. 3d 468, 477 (1982)). The purposes of the doctrine are "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *People v. Taylor*, 12 Cal. 3d 686, 695 (1974), *overruled on other grounds by People v. Superior Ct. (Sparks)*, 48 Cal. 4th 1 (2010). In weighing those rationales, a court "must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." *Id.*

The purposes of the doctrine do not support applying collateral estoppel in this case. First, although Vargas seeks to relitigate the identification issue,

1

allowing Vargas to litigate this claim in a civil suit under 42 U.S.C. § 1983 is not a significant burden on the judicial system. *See Lucido*, 51 Cal. 3d at 351 (explaining that judicial efficiency does not always outweigh other judicial interests). And by dismissing the claim before Vargas could conduct discovery, he was denied the opportunity to gain new information on the circumstances surrounding his wrongful identification.[1] The rationale of judicial efficiency should not foreclose Vargas's opportunity to conduct discovery and litigate his claim for the first time in a civil suit.

Second, any inconsistency between the results in this § 1983 lawsuit and the state trial court's denial of Vargas's motion to suppress does not implicate the integrity of the judicial system. *See F.E.V. v. City of Anaheim*, 15 Cal. App. 5th 462, 466 (2017) (giving preclusive effect to a judgment that was based on a decision that was later reversed "erode[s] public confidence in judicial decisions"). Vargas spent over sixteen years incarcerated before being released and receiving a finding of factual innocence under California Penal Code § 851.86. In my view, we do not preserve judicial integrity by preventing litigation that seeks to identify

---

[1] Discovery in a § 1983 lawsuit can sometimes reveal how a wrongful conviction occurred. *See Evans v. Katalinic*, 445 F.3d 953, 955–56 (7th Cir. 2006) (declining to give preclusive effect to the denial of a motion to suppress in a decades-later post-exoneration § 1983 lawsuit, where a witness revealed in a deposition that police pressured her to make an identification).

2

the causes and circumstances of a serious miscarriage of justice, like the one Vargas suffered.

Third, the identification claim does not constitute vexatious litigation. Whether litigation is vexatious is not about "mere repetition," and instead concerns "harassment through baseless or unjustified litigation." *Lucido*, 51 Cal. 3d at 351; *see also People v. Barragan*, 32 Cal. 4th 236, 257 (2004). No one asserts that Vargas seeks to harass the defendants with vexatious litigation; instead, he seeks to remedy a harm that resulted from his wrongful incarceration for over sixteen years. Any burden on the defendants in relitigating this claim over twenty years after Vargas's conviction pales in comparison to the grave injustice experienced by Vargas.

"Finality of judgments, the underpinning of res judicata, is an important policy, but it is a means to an end—justice—and not an end in itself." *F.E.V.*, 15 Cal. App. 5th at 466. Invoking issue preclusion to prevent Vargas from litigating his identification claim because he did not prevail on a motion to suppress in the criminal proceedings that led to his wrongful incarceration does not serve the interests of justice. I would reverse the district court's dismissal of this claim and remand it for further proceedings.